# In re Anonymous No. 3 D.B. 86

Disciplinary Board Docket no. 3 D.B. 86.

SCHWARTZMAN, *Member,* July 30, 1987—Pursuant to rule 208(d) of the Pennsylvania Rules of Disciplinary Enforcement, the disciplinary board of the Supreme Court of Pennsylvania herewith files its report with respect to the above petition for discipline.

## HISTORY OF PROCEEDINGS

Respondent was admitted to practice law in the Commonwealth of Pennsylvania in 1966. His office is located in [ ], Pa.

Petitioner filed a petition for discipline on January 15, 1986 which was served on respondent on January 28, 1986. The petition charged respondent with a violation of D.R. 9-102(B)(4) which requires an attorney to promptly deliver to a client as requested by the client property in possession of the attorney which the client is entitled to receive.

Respondent did not file an answer within the prescribed time limit and the matter was assigned to Hearing Committee [ ] consisting of [ ]. The hearing committee held a hearing regarding this matter on November 4, 1986.

At the conclusion of the testimony, the committee suggested disposing of the matter under the abbre-

viated procedure of Disciplinary Board Rules and Procedures section 89.181. Both petitioner and respondent rejected this suggestion and the hearing continued to its completion. In its report, filed on February 27, 1987, the committee recommended the discipline of informal admonition for respondent.

Petitioner did not submit exceptions to the hearing committee report. Respondent filed a brief on exceptions on March 19, 1987. Petitioner responded with a brief opposing exceptions, filed on April 6, 1987. The matter was referred to the board on May 13, 1987 and was adjudicated by the board on May 28, 1987.

Respondent is charged with a violation of the above-cited disciplinary rule arising from his refusal to release savings certificates after receiving a letter from his client and the client's ex-wife stating that the conditions for release of the certificates had been met and requesting the release of the certificates.

Respondent admitted that he refused to release the certificates but alleged that the conditions for release, set forth in a marriage settlement agreement, had not been complied with by his client. Furthermore, petitioner alleged that he was holding the certificates under an attorney's lien for an unpaid bill of $450.

The hearing committee found that the parties to the marriage settlement agreement (client and his ex-wife) had mutually modified that agreement by writings delivered to respondent declaring that the agreement had been complied with. As a result of this finding, the committee found further that respondent had no legal basis for his refusal to deliver the certificates.

The committee found that respondent had no

legal basis to assert an attorney's lien on the certificates since all prior fees had been paid and respondent could produce no justification for additional charges. The committee concluded that respondent violated D.R. 9-102(B)(4) by refusing to deliver the certificates after receiving the letter from his client and the client's ex-wife requesting the release of the certificates. The committee recommended that the matter be concluded by informal admonition.

In his brief on exceptions, respondent alleged that petitioner was attempting to harrass him by being prepared to appeal any unfavorable finding by the committee, and by knowingly accepting untrue statements by his client. Petitioner responded to these allegations in the brief opposing exceptions by stating that objecting to unfavorable decisions is not harassment. Petitioner stated further that, because the committee found that the agreement had been complied with, petitioner's reliance on statements by the client regarding the agreement could not be considered harassment by petitioner.

Respondent excepted to the characterization of his conduct as "bizarre," claiming his conduct was understandable given the conduct of his client. The petitioner countered by pointing out that "the record is replete with evidence of respondent's determination not to yield to his client's demand that he return the client's property." Petitioner asserted that the evidence showed respondent's behavior was neither understandable nor justifiable.

Respondent asserted that any violation of D.R. 9-102(B)(4) was de minimus because no financial loss resulted to the client and no financial loss was intended. Petitioner responded to this assertion by stating that just because a client does not suffer loss does not relieve the attorney of liability for his misconduct.

Finally, respondent argued that the committee sought to discipline him for exercising his rights and this could have a chilling effect on other respondents from exercising their rights. Petitioner, on the other hand, noted that respondent was not prohibited from exercising his rights under the Rules of Disciplinary Enforcement and the Disciplinary Board Rules and, therefore, there will be no chilling effect on future respondents in the exercise of their rights. The committee sought to discipline respondent for his personal conduct, not for a right asserted or position taken by him.

## FINDINGS OF FACT

(1) In 1977, respondent was retained by [A] to represent him in divorce proceedings against his wife, [B].

(2) In October 1978, respondent and the wife's counsel accomplished a written marriage settlement agreement which was executed by the husband and wife.

(3) Said agreement outlined the disposition of three "promissory note certificates" and provided for the husband to purchase a fourth certificate by December 31, 1978.

(4) The husband and wife were each to hold one certificate and the third was to be held by respondent in escrow. Upon the husband purchasing the fourth certificate in the same title of ownership, respondent, depending upon the circumstances of purchase, was to deliver the escrowed certificate to either the husband or wife which would result in each of them having possession of two certificates in trust for their child.

(5) At the time the agreement was signed, the husband delivered to the respondent both certifi-

cates in his possession, one for escrow and the other for safe keeping.

(6) [A] paid respondent's fees in full.

(7) Although the husband did not comply with the terms of the agreement with regard to the time and manner of acquiring the fourth certificate of deposit, he did in November 1980, purchase a certificate in the required amount in trust for the child.

(8) The husband, believing that he had complied with the requirements of the agreement, began calling respondent in 1981 to obtain the two certificates respondent was holding, without success.

(9) In April 1984, after repeated calls, the husband called respondent requesting the certificates and after a heated discussion, respondent advised husband that he owed additional fees and hung up the telephone.

(10) On or about the same date, the husband and wife went to respondent's office unannounced where they prepared a handwritten statement jointly requesting the certificates. After approximately one hour, the husband and wife confronted respondent in his office, presented him with the written statement and demanded the certificates. Respondent telephoned the police whereupon the husband and wife left.

(11) The husband and wife, by letter dated May 8, 1984, advised respondent that they jointly agreed that the marriage settlement agreement of October 5, 1978, had been completed in all of its terms and requested delivery of the certificates held by respondent.

(12) Respondent, by letter dated June 11, 1984, acknowledged receipt of the letter of May 8, 1984, summarized what he considered to be the husband's harassment and refused to turn over the cer-

tificates under his attorney's lien unless a bill for $450, which was enclosed with the letter, was paid.

(13) The husband rolled over the funds represented by the now matured certificates held by respondent with the [C] Credit Union on or about June 6, 1984, and transferred the fourth certificate to that account, thereby maintaining the fund intact and without loss of earnings.

(14) A complaint was filed with petitioner and by letter dated June 12, 1984, respondent was advised of the allegations in this matter.

(15) Respondent, by letter dated February 15, 1985, sent the husband's certificate to petitioner and advised that the escrowed certificate had been forwarded to wife's attorney.

## CONCLUSIONS OF LAW

The board finds that respondent has violated D.R. 9-102(B)(4) by refusing to deliver the savings certificates when requested to do so and having no legal basis for his refusal to deliver the certificates.

## DISCUSSION

There is no factual dispute regarding respondent's refusal to release the certificates. There is, however, a factual and legal dispute regarding compliance with the marriage settlement agreement and the right of respondent to retain the certificates. This dispute was resolved by the hearing committee in favor of petitioner. The committee, which heard the evidence and saw the participants at the hearing, found that the agreement had been complied with and that there was no legal basis for an attorney's lien on the certificates for payments allegedly owed to respondent. Because of these findings respondent had no legal right to retain the certificates. The board adopts these findings and, therefore, con-

cludes that respondent violated D.R. 9-102(B)(4) by failing to promptly release the certificates as requested by the client.

The question of appropriate discipline in this matter gives rise to a disagreement between the recommendation of the committee and the position of the board on this issue. The committee recommends informal admonition as did petitioner. The committee, however, stated its belief that respondent acted in a manner to inconvenience his client and all of the parties participating in the disciplinary process. Furthermore, the record indicates respondent's adverse attitude toward the board. Because of the behavior and attitude displayed by respondent the board is of the opinion that informal admonition would not have sufficient impact upon respondent.

## RECOMMENDATION

Based on the foregoing discussion, it is the determination of the board that respondent receive a private reprimand by the board. Furthermore, pursuant to rule 208(g)(2) of the Pennsylvania Rules of Disciplinary Enforcement, respondent is directed to pay the costs incurred in the investigation and prosecution of this matter.

Messrs. Helwig and Keller dissented.

Messrs. McDonald, McGinley, Brown and Tumolo did not participate in the adjudication.

## ORDER

And now, July 30, 1987, upon consideration of the report and recommendation of Hearing Committee [   ] dated February 27, 1987; it is ordered and decreed, that the said [respondent] of [   ] County, be subjected to private reprimand by the disciplinary board of the Supreme Court of Pennsyl-

vania as provided in rule 204(a)(5) of the Pennsylvania Rules of Disciplinary Enforcement at the next session of this board. Costs are to be paid by respondent.